| | | |
|---|---|---|
| KARL SCHMIDT UNISIA, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-CV-297 JVB |
| | ) | |
| INTERNATIONAL UNION, | ) | |
| UNITED AUTOMOBILE, AEROSPACE | ) | |
| AND AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA, UAW | ) | |
| LOCAL 2357; AND SAM JENKINS | ) | |
| AND JOHN TONY SMITH | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment [DE 31] of Defendants/Counter-Plaintiffs, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW Local 2357, and Sam Jenkins and John Tony Smith.

**A.    Standard of Review**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, the burden of showing that an issue of material fact exists thereby shifts to the non-moving party. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts *that might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir. 1988), quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50 (1986).

**B.**     **Background and Facts**

The Court finds the following facts for purposes of the Motion for Summary Judgment: Plaintiff/Counter-Defendant Karl Schmidt Unisia, Inc. ("Company"), and its predecessor, Zollner, operates a facility in Fort Wayne, Indiana, that manufactures car pistons. Defendant/Counter-Plaintiff International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW Local No. 2357 ("Union") is the Union that represents the Company's hourly production and maintenance employees for the purpose of collective bargaining. After the Company purchased Zollner, the Company and the Union were parties to collective bargaining agreements ("CBAs") that reflected the parties' agreements concerning wages, benefits, hours of employment, and various other terms and conditions of employment.

One provision of the CBA concerned a supplemental pension benefit, known as the Thirty and Out plan. Before 2002, the CBA stated that Union employees with 30 years of employment with the Company were eligible to retire, regardless of age, and to receive the Thirty and Out supplemental pension benefit until they reached the age of 62, when the employee would become eligible for Social Security.

Because this allowed for the possibility that employees who began working at age 18 could retire as early as age 48 and receive the benefit, the Union and the Company agreed to modify the Thirty and Out provision. In 2002, the parties added the requirement that an employee must be at least 58 years of age and have completed thirty years of employment before he or she could retire and receive the supplemental pension benefit. In the 2005-2008 CBA, the parties again agreed to modify the Thirty and Out provision. The 2005-2008 CBA provides:

Section 13.01. Pension Plan. The Karl Schmidt Unisia, Zollner Division, Inc.

3

> Pension Plan, as amended by these negotiations shall continue in effect for all employees who are vested and/or were hired prior to 7-1-02 for the term of this agreement. The plan has been amended as follows:
>
> 30 and out: $1,500 per month
>
> The "Thirty and Out" provision of the Pension Plan applies only to those employees who have reached:
>
> Age 58 and 30 years of service or;
> Age 57 and 32 years of service or;
> Age 56 and 35 years of service.

(DE 33-7, CBA at 33).

In early 2007, the Union learned that the Company intended to deny the Thirty and Out supplemental pension benefit to employees who were on layoff at the time they reached the requisite age specified in Section 13.01 of the CBA. In April 2007, the Company issued a WARN Act notice to the Union that there would be a mass layoff of Union employees at the Fort Wayne facility.[1]

Faced with the prospect that Union employees would be denied the Thirty and Out benefit if they reached the requisite age while on layoff, Rick Leeuw, the Union's bargaining unit chairman, contacted the Company's Human Resources director, Joe Cobb, and asked him if the Company would be willing to resolve the dispute by engaging in the grievance procedure contained in the CBA before it actually denied the Thirty and Out benefit to the Union employees.

The CBA contained a dispute resolution process for grievances, which are defined as "claim[s] by the Union, an employee, or group of employees . . . that the Company has violated

---

[1] The Worker Adjustment and Retraining Notification Act, commonly known as the WARN Act, requires employers that meet certain requirements to provide 60 days advance notice of certain qualifying plant closings and mass layoffs. 29 U.S.C. § 2101 *et. seq.*

an express provision of this agreement by some conduct, act or omission occurring during the term of the agreement." (DE 33-7, CBA at 5). The CBA further provided that the Union could "grieve any violation of this agreement on behalf of the individual grievant." *Id.*

Section 4.02 of the CBA provides a four-step procedure for resolution of a grievance, and provides that the procedure is the "sole and exclusive remedy for any grievance." (DE 33-7, CBA at 5). Section 4.03 of the CBA states that if the four step procedure does not resolve the grievance, the Union may appeal the grievance to arbitration within five working days after the completion of the fourth step. The CBA also provides a process for choosing arbitrators, which allows for each party to reject a panel of arbitrators once.

On June 20, 2007, the Union filed a grievance with the Company about its concern that the Company intended to deny Union employees on layoff the ability to reach the requisite years of employment for the Thirty and Out provision. At the time of the filing of the grievance, Defendants/Counter-Plaintiffs Sam Jenkins and John Tony Smith had both reached ages that would make them eligible for the Thirty and Out benefit, but were denied retirement with the Thirty and Out benefit because they were on layoff when they reached the requisite age. The Union also filed grievances with the Company on their behalf.

The Union and the Company engaged in all four steps of the process contained in Section 4.02 of the CBA, but were unable to resolve the grievance. Thereafter, the Union notified the Company that it was appealing the grievance to arbitration pursuant to Section 4.03 of the CBA. Following the process outlined in the CBA, the Company first rejected a panel of arbitrators and requested a new panel. The Union rejected the second panel. A third panel of arbitrators was requested by the parties. After the third panel was appointed, the Company notified the Union

that it was refusing to arbitrate the grievances. The Company subsequently filed this action against the Union seeking a declaratory judgment that the claims are not arbitrable.

The Union filed a Motion for Summary Judgment with the Court, arguing that since the CBA contains a broad arbitration clause, any disputes concerning the Thirty and Out provision should be arbitrated pursuant to the procedures contained in the CBA. The Company argued in its Response that the Company's Pension Plan and ERISA, not the CBA, govern the dispute, since the central issue is whether employees can reach the age requirement while on lay off status.

**C.     Analysis**

Three cases decided in 1960, known as the *Steelworkers Trilogy*, laid the foundation for the law governing the duty to arbitrate under a CBA. *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); and *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960). These cases set out four principles the Court must follow. The first rule from the *Steelworkers Trilogy* is that the duty to arbitrate is a matter of contract, and a party cannot be compelled to arbitrate a dispute that it has not agreed to arbitrate. *Warrior & Gulf*, 363 U.S. at 582; *Am. Mfg. Co.*, 363 U.S. at 570–571. Second, the cases make clear that whether a CBA creates a duty to arbitrate a particular grievance is an issue for judicial determination and is to be decided by the court and not the arbitrator. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986), citing *Warrior & Gulf*, 363 U.S. at 582–583.

The next principle this Court must follow is that a court must not rule on the potential

6

merits of the underlying claims in deciding whether a grievance should be submitted to arbitration. *AT&T Tech.*, 475 U.S. at 649 (citing *American Mfg. Co.*, 363 U.S. at 568.) Finally, where a CBA contains an arbitration clause, a presumption of arbitrability arises, which "should not be denied unless it may be said with positive assurances that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf*, 363 U.S. at 582–583.

When a general arbitration clause exists in a CBA, the presumption of arbitrability can only be overcome if a court can say "with positive assurances that the arbitration clause is not susceptible of an interpretation that covers the dispute." *Warrior & Gulf*, 363 U.S. at 582–583. This can happen in two circumstances. *Id.* at 584–585. The first circumstance occurs where the issue is specifically excluded from arbitration in the CBA. *Id.* The second circumstance occurs if the issue is not specifically excluded from arbitration. In that case, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* at 585.

The CBA contains an arbitration clause which reads:

> The Union may grieve any violation of this agreement on behalf of the individual grievant, or the local Union, on forms provided by the Company. . . . Each grievance arising under this agreement shall be resolved in accordance with the procedure described in this article of agreement. The procedure shall provide the sole and exclusive remedy for any grievance.

(DE 33-7, CBA at 5). The general arbitration clause allows the Union to grieve *any violation* of the CBA, and this broad arbitration clause triggers the presumption of arbitrability pursuant to *Warrior & Gulf,* 363 U.S. at 582–583; see also *Allied Indus. Workers of Am. v. Briggs & Stratton Corp.*, 837 F. 2d 782, 784 (7th Cir. 1988) ("If the parties have entered into a collective bargaining agreement which contains an arbitration clause, there is a presumption of

7

arbitrability.").

The parties agree that the CBA does not specifically exclude the Thirty and Out provision. However, the Company argues that since the parties did not include a provision explaining whether an employee on lay off can age into the Thirty and Out plan, the Court should consider that failure to include as a specific exclusion. The Court believes that construing a failure to include a provision as a deliberate exclusion would necessarily result in considering the merits of the dispute. Any attempt to decipher the parties' intentions as to the specifics of the Thirty and Out provision would cause the Court to entangle itself in the merits of the dispute. The Supreme Court stated in *Warrior & Gulf,*

> Since any attempt by a court to infer...a purpose [to exclude a claim from arbitration] necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.

*Warrior & Gulf,* 363 U.S. at 585. Therefore, the Court declines to accept the Company's argument on this issue.

Since the Thirty and Out provision is not specifically excluded from arbitration, the claim is arbitrable unless the most "forceful evidence" exists that there was a purpose to exclude the Thirty and Out provision from arbitration. *Warrior & Gulf*, 363 U.S. at 585. The Company argues that the most forceful evidence for that purpose exists, in that the CBA says nothing about whether a Union employee can age in to the Thirty and Out plan while on layoff, but the Pension Plan does. Therefore, the Company argues, the grievance is not arbitrable under the CBA, and instead, employees must follow the appeal procedures contained in the Pension Plan.

There is some case law that indicates that the presumption of arbitrability can be rebutted

even where a term has not been explicitly excluded from the arbitration clause, constituting the most "forceful evidence" to exclude the particular subject matter from arbitration. *Warrior & Gulf,* 363 U.S. at 582–583 and 585. Namely, the Company cites *Printing Specialties & Paper Products Union Local 680 v. Nabisco Brands*, 833 F. 2d 102 (7th Cir. 1987) in support of its argument. In that case, the court refused to compel arbitration because it stated that the pension benefits in dispute were not covered by the CBA. *Id.* at 104–105. The dispute was over a clause in the CBA that simply stated that Nabisco would keep the plan in full force and effect. *Id*. at 103. Because the pension plan was wholly negotiated and administered separately from the CBA and it contained its own grievance procedures, the court found that "the passing reference to the Pension Plan in the collective bargaining agreement does not bring specific pension disputes, such as the ones involved here, under the umbrella of the arbitration clause of the agreement." *Id.* at 105.

Additionally, in *Int'l Assn. of Machinists and Aerospace Workers, Dist. No. 10 v. Waukesha Engine Division,* 17 F. 3d 196 (7th Cir. 1994), the CBA expressly incorporated a benefits plan, which included medical benefits. A union member's wife was denied medical coverage for a hospital stay because it was not "medically necessary," and the employee filed grievances both with the insurance company and requested arbitration under the CBA with the company. *Id.* at 197. The parties agreed in the CBA that the Copmany would "continue to provide the present employee insurance coverage as amended . . . as *specified in the Summary Plan Booklet.*" *Id.* at 198. (emphasis original). The court held that the term "medically necessary" was only defined by the Benefits Plan and, even though the CBA incorporated the insurance coverage by reference, the company had not submitted itself to arbitration on a grievance concerning that term. *Id.* at 199. It stated, "There is no mention whatsoever of 'medically necessary' in the collective bargaining agreement between [the union] and [the company], nor is there any other

9

indication that the parties intended that term to be a part of their collective bargaining agreement subject to arbitration." *Id.*

The Third Circuit refused to compel arbitration in *United Steelworkers of America v. Rohm and Haas Company*, 522 F. 3d 324 (3d Cir. 2008). In that case, the company and the union were in dispute over certain disability benefits. The court refused to compel arbitration because they did not arise from the CBA; instead, the court found, disability benefits arose entirely from an ERISA plan. *Id.* at 334–335. The court noted,

> the [CBA] does not, however, have an article devoted to disability benefits nor does it provide any sort of discussion as to the employees' rights to or calculations regarding such benefits. Because there is no specific language addressing the employees' rights to disability benefits, we cannot say that such benefits were provided for under the terms of the [CBA].

*Id.* at 333.

The cases the Company cites in support of its argument, such as *Nabisco, Waukesha,* and *Rohm & Haas,* are distinguishable from the case at hand. First, in *Nabisco,* the court declined to compel arbitration because the pension plan was mentioned only in passing in the CBA, to keep the plan in full force and effect. *Nabisco,* 833 F. 2d at 105. In the CBA between the Union and the Company, the Thirty and Out provision is far more than just a "passing reference." *Id.* at 105. The CBA devotes an entire section to the Thirty and Out provision, which contains the specific requirements an employee must meet before he or she can receive the supplemental pension benefit.

The immediate case is distinguishable from the facts in *Rohm & Haas* for a similar reason. The *Rohm & Haas* court declined to compel arbitration because there was no article in the CBA devoted to the disability benefits in question and there was absolutely no discussion in the CBA

10

of the employees rights regarding the benefits. *Rohm & Haas,* 522 F. 3d at 333. In contrast, in the present case, the CBA devotes an entire article to the Thirty and Out benefit and the article spells out the specifics of the plan.

The present case can also be distinguished from the facts in *Waukesha*. In that case, the court declined to compel arbitration where the dispute was over the term "medically necessary," which was not included anywhere in the CBA. *Waukesha,* 17 F. 3d at 197. The Company argues that *Waukesha* is analogous to the present case because of the absence of the age-in requirement while on layoff in the CBA and urges us to follow its precedent. The court in *Waukesha* declined to compel arbitration because there was absolutely no mention of the term "medically necessary" in the CBA, and the medical care plan was only incorporated by reference. *Id.* at 198–199. Here, the CBA states what the Thirty and Out benefit is and how an employee can qualify to receive it. In doing so, the CBA does far more than just incorporate the Thirty and Out plan by reference. In including the Thirty and Out plan in the CBA, the parties agreed to arbitrate any disputes concerning it, contrary to the facts in *Waukesha*.

Case law overwhelmingly indicates that where, as here, there is more than a mere passing reference of the disputed issue in the CBA, the most "forceful evidence" of a purpose to exclude the claim from arbitration does not exist, *Warrior & Gulf*, 363 U.S. at 585, and courts must order arbitration. For example, in *Allied Indus. Workers of Am. v. Briggs & Stratton Corp.*, 837 F. 2d 782, 784 and 786 (7th Cir. 1988), the court considered whether the most "forceful evidence" of a purpose to exclude a provision from the arbitration clause existed, where the provision required the company to maintain the terms of a retirement plan. Changes were made to the retirement plan that affected only non-union employees. *Id.* at 784. Because the dispute was over whether the company maintained the terms of the retirement plan, the court found that the company had

11

submitted itself to arbitration on that term. *Id.* at 787.

Like in *Briggs & Stratton*, 837 F. 2d at 784 and 746, in the present case, there is overlap between the CBA and a side plan; in this case, the Pension Plan. In *Briggs & Stratton*, the court ordered arbitration because it found that the subject matter of the dispute was contained within the CBA. *Id.* at 787. In the present case, the subject matter of the dispute, the Thirty and Out plan, is likewise contained within the CBA. In fact, the CBA in the present case provides much more detail about the Thirty and Out plan than the CBA in *Briggs & Stratton*, which merely specified that the company was required to maintain the plan.

*Exelon Generation Co. v. Local 15, Int'l Bhd. of Elec. Workers*, 540 F. 3d 640, 642 (7th Cir. 2008) involved a situation where the company made changes to the benefits, specified in the CBA, conferred upon retirees. The company argued that it did not submit itself to arbitration over a grievance brought by the Union on behalf of those who were currently retirees, because the CBA contained language that applied the provisions of the CBA to employees. *Id.* at 646. The company contended that the term "employees" meant current employees only, and not current retirees, and therefore "forceful evidence" existed to exclude the grievance from arbitration. *Id.* at 646 (quoting *AT&T* 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 584–585.).).

The court found the fact that the term "employees" was used in the CBA did not constitute "forceful evidence," and it ordered arbitration. *Exelon*, 540 F. 3d at 646 (quoting *AT&T* 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 584–585)). The court stated,

> An interpretation of the arbitration language so as to include disputes between [the company] and [the union] over retiree medical benefits is a reasonable one given the breadth of the grievance and arbitration procedure. And where both the [union's] and [the company]'s competing interpretations are reasonable, it cannot be said with 'positive assurance' that the grievance and arbitration procedure is not susceptible to an interpretation that covers the dispute over retiree medical benefits.

*Id.* at 647.

In the present case, like in *Exelon*, the breadth of the arbitration clause mandates that the terms of the CBA are arbitrable. The facts in *Exelon* differ from the facts in the present case. Namely, in the present case, the Company is not arguing the meaning of a particular term that would take it outside of the CBA. However, like the facts in *Exelon*, the Company is arguing that facts exist that constitute "forceful evidence" to exclude the subject matter of the dispute from arbitration. The CBA in the present case is plainly susceptible to an interpretation that covers the dispute over the Thirty and Out provision, and therefore, ordering arbitration is necessary.

Further indication that arbitration is appropriate in this case is that the majority of courts tend to compel arbitration where there is a general arbitration clause and the CBA contains more than a mere passing reference to the subject matter of the dispute. *See United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union v. TriMas Corp.*, 531 F. 3d 531 (7th Cir. 2008) (holding that, because the parties agreed to arbitrate all terms of the CBA, the district court was correct to ignore the existence of a side deal); *Air Line Pilots Assn. v. Delta Air Lines, Inc.*, 863 F. 2d 87 (Fed. Cir. 1988) (because the CBA incorporated outside material by reference, the outside material became part of the CBA and the claims were therefore arbitrable); *E.I. Dupont de Nemours & Co. v. Ampthill Rayon Workers, Inc.*, 290 Fed. Appx. 607 (4th Cir. 2008) (unpublished) (holding that the wide breath of the arbitration clause in the CBA warranted compelling arbitration where there was no "forceful evidence" that the parties agreed otherwise); *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F. 3d 217 (6th Cir. 2007) (because a side letter pertained to a subject addressed in the CBA, compelling arbitration under the CBA was appropriate); *United Food and Comm. Workers Union v. Geldin Meat Co.*, 13 F. 3d 1365 (9th Cir. 1994) (where there were no exclusions from the arbitration clause, an

employee grievance regarding medical coverage was covered by the CBA).

These cases lead to the conclusion that ordering arbitration is necessary because the most "forceful evidence" of a purpose to exclude the Thirty and Out benefit does not exist. *Warrior & Gulf*, 363 U.S. at 582–583 and 585. In the cases above, the facts were not as compelling or clear as the facts in the present case, yet arbitration was still ordered. The Union's grievance pertained to the Thirty and Out benefit, and the Thirty and Out benefit is contained within and explained by the CBA, which has a general arbitration clause. Arbitration must be ordered.

## CONCLUSION

No genuine issue of material fact exists in this case, and the Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Because of the general arbitration clause contained in the CBA, a presumption of arbitrability exists. That presumption of arbitrability has not been rebutted because the Thirty and Out provision was not specifically excluded from the arbitration clause and the most "forceful evidence" of a purpose to exclude the provision from arbitration does not exist. Resolving all doubts in favor of coverage by the arbitration clause, the Court finds that the Defendants' Motion for Summary Judgment should be granted.

Accordingly, the Court GRANTS the Defendants/Counter-Plaintiffs' Motion for Summary Judgment [DE 31]. The Clerk is ordered to enter final judgment in favor of the Defendants/Counter-Plaintiffs.

So ordered November 12, 2009.

    s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE